IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| ADVANCED FITNESS CONCEPTS, INC. d/b/a VULCAN STRENGTH TRAINING SYSTEMS,<br><br>Plaintiff,<br><br>v.<br><br>ADRIAN GLUCK and GLUCK'S GYM LLC,<br><br>Defendants. | Civil Action No. 3:25-cv-878<br><br>COMPLAINT<br><br>Jury trial demanded |

Plaintiff Advanced Fitness Concepts, Inc. d/b/a Vulcan Strength Training Systems ("Vulcan" or "Plaintiff"), by and through its undersigned counsel, for its Complaint against Defendants Adrian Gluck ("Gluck") and Gluck's Gym LLC ("Gluck's Gym") (collectively "Defendants"), alleges and states as follows:

## Nature of the Action

1. This is an action for injunctive and monetary relief based on Defendants' publication of false, unfair, deceptive, and defamatory statements about Vulcan and its products in violation of federal and state law. Defendants are in the business of posting online video reviews of fitness equipment. They hold themselves out as providing "in-depth and honest reviews," but receive compensation from major fitness equipment manufacturers when their reviews generate sales. Defendants persuaded Vulcan, a small veteran-owned company that designs and sells fitness equipment, to send them at no charge Vulcan's TALOS All-In-One Gym for review. Rather than producing a good-faith review, however, Defendants published a highly negative video which intentionally made false, misleading and deceptive statements about

the TALOS product, and made gratuitously disparaging remarks about Vulcan and its products. Defendants produced this incendiary negative review of a small company's product to bolster Defendants' reputation for "honesty" without endangering their revenue streams from large manufacturers. Despite Vulcan's request, Defendants have failed to withdraw or correct their defamatory video, resulting in lost sales and profits to Vulcan and irreparable damage to Vulcan's customer reputation and goodwill. Vulcan therefore brings this action to halt Defendants' ongoing tortious conduct, and for appropriate monetary relief.

## Parties

2. Plaintiff Vulcan is a North Carolina corporation in good standing with its principal place of business located in Charlotte, North Carolina.

3. Defendant Gluck is, upon information and belief, a citizen and resident of Killingworth, Connecticut.

4. Defendant Gluck's Gym is, upon information and belief, a limited liability company organized under the laws of the State of Connecticut, with its principal place of business located in Killingworth, Connecticut.

5. Upon information and belief, Gluck's Gym was organized by and is owned or controlled by Gluck, and is the vehicle through which Gluck does business.

## Jurisdiction and Venue

6. This Court has subject matter jurisdiction over the federal claim in this case pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338, in that it arises under Section 43 of the Lanham Act, 15 U.S.C. § 1125. This Court has subject matter jurisdiction over the state claims in this case (i) pursuant to 28 U.S.C. § 1338(b), in that they are claims of unfair competition joined with substantial and related claims under the federal trademark laws,

2

specifically 15 U.S.C. § 1125; (ii) pursuant to 28 U.S.C. § 1332, in that this action is between citizens of different States and the matter in controversy exceeds the sum or value of $75,000 exclusive of interest and costs; and (iii) pursuant to 28 U.S.C. § 1367(a) and the principles of supplemental jurisdiction.

7. This Court may properly exercise personal jurisdiction over Defendants because they reached out to Vulcan in North Carolina, established an affiliate relationship with it, induced Vulcan to ship its product to Defendants from this state, targeted Vulcan in North Carolina with their wrongful conduct, and knew that their conduct would cause substantial damage to Vulcan in this state, all as alleged further below.

8. Venue is proper in this judicial district under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Vulcan's claims occurred here, in that Defendants' false and defamatory video was published here and viewed by residents of this district, and the resulting damage to Vulcan was sustained and felt here, all as alleged further below.

**Facts Common To All Claims**

**Vulcan and Its Products**

9. Vulcan, founded in 2008, is a 100% veteran-owned company and is registered as a Small Disadvantaged Business with the U.S. Small Business Administration pursuant to 13 CFR 124. Vulcan designs and sells Olympic-class weightlifting equipment, cross-training equipment, home gym equipment, and commercial gym fitness equipment.

10. Over the 17 years of its existence, Vulcan has built an excellent reputation among customers for high quality products and superior service. For example, Reviews.io, an independent customer reviews aggregation site, reports that Vulcan's average rating among more than 3,400 customer reviews is 4.8 out of five stars, and that 96% of reviewers recommend

3

Vulcan's products.

11. Among Vulcan's products is the TALOS All-In-One Gym, a home universal gym system that provides multiple strength-training functions within a single integrated frame.

12. Launched in December 2023, the TALOS product has been well-received by customers and reviewers. For example, Garage Gyms, an independent review site, published a thorough review on August 31, 2025, that concluded, "The TALOS is an exceptional piece of equipment – checking a ridiculous amount of boxes on just about any garage gym checklist," and is "well thought-out in terms of what features to include, what materials to use in order to provide both safety and longevity, and how to price it to remain extremely competitive…."

**Defendants' Business**

13. Defendant Gluck and his company, Defendant Gluck's Gym, produce video reviews of fitness equipment. These reviews typically feature Gluck on camera describing the reviewed product.

14. Defendants maintain a web site at https://glucksgym.com/ which says that Defendants' business "strives to provide in-depth and honest reviews on well tested items."

15. In addition to posting reviews on their web site, Defendants also post their reviews on YouTube, Instagram, and other online platforms. Upon information and belief, Defendants realize advertising revenue when their reviews are viewed on these platforms.

16. Defendants also maintain a presence on Patreon, an online monetization platform that allows content creators to run a subscription service. Patreon users pay monthly membership fees to view content posted by Defendants.

17. Upon information and belief, Defendants have agreements with many fitness equipment manufacturers to pay Defendants compensation when Defendants generate sales of

4

the manufacturers' equipment. Defendants' web site lists dozens of manufacturers as "Affiliates," the largest of which are Rogue Fitness and Rep Fitness.

**Defendants' Engagement With Vulcan**

18. Some years ago, Defendants applied to Vulcan in North Carolina to become an affiliate, and entered into an Affiliate Agreement with Vulcan that provided, among other terms, that Defendants would receive commissions on sales generated by their promotion of Vulcan products; that Vulcan would, in its discretion, provide Defendants with Vulcan products for review; and that Defendants would avoid slander, misrepresentation, or disparagement of Vulcan products, services, or reputation.

19. Defendants were not particularly active as a Vulcan affiliate until July of 2024, when Gluck began communicating with Vulcan's CEO about obtaining Vulcan's TALOS All-In-One Gym product for review.

20. Gluck persisted in requesting a TALOS review product, making renewed requests in October 2024, January 2025, and May 2025. In initiating and pursuing these contacts with Vulcan, Defendants knew that Vulcan was located in Charlotte, North Carolina, in this judicial district.

21. As a result of these communications, in early June 2025 Vulcan shipped the TALOS product from its warehouse in Charlotte, North Carolina, to Defendants at no charge for evaluation. As configured by Defendants, the product had a retail value in excess of $4,000.

22. After receiving the product, Gluck had multiple communications with Vulcan about assembly. Among other things, Gluck stated that he was missing some parts. Vulcan advised that new and improved parts were on order, and would be forwarded as soon as Vulcan received them.

5

23. Gluck also identified some issues he said he was seeing with the TALOS product, including concerns about the assembly instructions and the tautness of the cables, but acknowledged that he hadn't yet been able to fully test due to the missing parts.

24. In response, Vulcan re-sent a full copy of the assembly instructions, including four detailed schematic pages and a six-page step-by-step assembly guide, and pointed out that a full 3D virtual model showing every detail of the product was available on Vulcan's website.

25. With respect to the tautness of the cables, Vulcan advised that the standard cables are intentionally designed with about 1.5 inches of slack, but because customers have different preferences for cable slack, Vulcan ships shorter cables to any consumer that prefers them at no charge. In a follow-up telephone call, Gluck said the existing cables were "fine" and there was no need for Vulcan to send shorter cables.

26. In mid-August, Vulcan learned that the new parts would be delayed longer than expected. Vulcan advised Defendants of the delay, and offered that Defendants could either continue to wait for the parts, or alternatively Vulcan would send someone to disassemble and remove the TALOS equipment, and the parties could try again later once the upgraded parts had arrived.

27. Gluck responded by inviting Vulcan to retrieve the product, saying "I don't have any way of shipping it back or I'd do that."

**Defendants' False and Disparaging Publications**

28. Despite the above agreement to put the project on hold, within ten days Defendants publicly posted online a video called a "60-second gym tour" in which Gluck briefly showed the TALOS product on camera and referred to it as a "pile of shit."

29. Less than two weeks later, Defendants posted on the Patreon web site a twelve-

6

minute video titled, "I just killed the Vulcan Talos (& maybe Vulcan too)." The Patreon video was only available to members who had subscribed to Defendants' channel, but Defendants also posted a free "teaser" on their Instagram page.

30. Shortly thereafter, Defendants posted the same video on their YouTube channel under the title, "This Is The Worst Product I've Ever Reviewed..." The YouTube posting is freely available to the public without restriction.

31. Defendants' video opens with an image of the TALOS product in a flaming trash bin. It then shows Gluck on camera, who proceeds to make intentionally false, misleading, and disparaging statements about both the TALOS product and Vulcan as a company, including the following:

    a. Gluck provides an extended rant about the tension in the product's cables, saying they have too much slack. He dismisses Vulcan's explanation that customers have different cable tension preferences with an expletive, and says, "THIS [pointing to cable] is awful!" Nowhere does he disclose that Vulcan sends shorter cables to all customers on request at no charge, or that he told Vulcan in advance that sending shorter cables was unnecessary and the existing cables were "fine."

    b. Gluck claims in the video that the grooves of the pulleys are too small for "these big, thick cables." The cables are 5mm in diameter and the pulley grooves are 9mm wide, providing a proper fit.

    c. Gluck falsely asserts that the user can't adjust cable tension from the trolley.

    d. Gluck states that Vulcan's directions don't say how to install the rear crossmember, causing him to install it upside down. The crossmember only has holes on one side so it can only logically be installed one way, and the instructions clearly show the

7

proper installation.

e. Gluck complains that Vulcan's assembly instructions are incomplete, but comprehensive instructions were emailed to him at the time the product was shipped. When the instructions were sent to him again later, he admitted that he "missed" them the first time.

f. Gluck claims falsely that the lat pull up bar doesn't fit properly. It does when the product is assembled per the instructions.

g. Gluck asserts that it is not possible to use band pegs with the product, which is false. Vulcan offers them as an accessory on its web site.

h. Gluck says the low row function is too low, calling it "the world's lowest low row." Some competing products have a lower low row, such as one offered by Rep Fitness which Defendants reviewed favorably.

32. Each of the above statements, as well as others throughout Defendants' video, were objectively false, and upon information and belief were known by Defendants to be false at the time they were made, or alternatively were made by Defendants without reasonable basis and Defendants failed to exercise ordinary care to determine whether the statements were false.

33. In addition to the above objectively false statements, Gluck also makes many gratuitously disparaging statements in the video, including:

a. Gluck calls Vulcan's web site "the world's worst website," with "low-res, grainy-ass pictures."

b. Gluck calls the ordering process "the worst experience I've ever had."

c. Gluck says Vulcan's pulleys "demonstrate every single thing you could do wrong," and that they "feel like shit."

8

d. Gluck says of the lat pull-down "there's no way they could have done worse," claiming at one point that there were "47 or so things" wrong with it.

e. Gluck concludes by saying, "If I was one of the people that spent my money on this, I'd be pissed."

**Defendants' Motives**

34. Upon information and belief, Defendants have active affiliate relationships with Rogue Fitness, Rep Fitness, and other large equipment manufacturers, which generate significant revenue for Defendants.

35. These relationships create a dilemma for Defendants, because Defendants' appeal in the marketplace depends on cultivating a reputation for fearless, hard-hitting reviews, but negative reviews of products from the large manufacturers would impact Defendants' revenue.

36. Defendants' solution was to fabricate a negative and incendiary "review" of the product of a small manufacturer, enabling Defendants to portray themselves as crusaders while protecting the competitive interests of the dominant companies in the industry who generate most of Defendants' revenue.

37. The video about Vulcan's TALOS product explicitly pursues this strategy. Gluck falsely asserts that he has been the target of legal claims in the past due to his reviews, when in fact the legal documents he briefly flashes on the screen do not evidence any claims, demands, or proceedings against him at all. He then proclaims, "This video won't make me money, it'll lose me money, a lot of it, so go subscribe…," with a subscribe link superimposed on the screen. Gluck concludes by claiming that the TALOS review will "lose me thousands of dollars," which he offers as a badge of integrity.

38. When Defendants posted the TALOS review on YouTube, Gluck pinned a text

9

comment that appears prominently on the page.  It reads in part, "Yes this video is a bit energized.  Sure, it could have been more professional. But I don't work for these companies I work for the viewers and I hope you find this helpful, concise, and fair. Also, subscribe because this has been a stressful endeavor."  This statement is false and misleading because Defendants do in fact "work for" Rogue Fitness, Rep Fitness, and other large manufacturers in that Defendants derive substantial revenue from favorable reviews of the products of those companies.  Defendants nonetheless explicitly hold out their attack on Vulcan and its product as evidence that Defendants don't work for "these companies" writ large.

**Impact of Defendants' Conduct**

39. Defendants' false and misleading TALOS review has been widely viewed by the consuming public, including by potential customers in North Carolina and this judicial district. For example, the video has over 70,000 views on YouTube with more than 500 user comments.

40. Potential customers have in fact been misled by Defendants' false and misleading representations, with a large number of commenters on YouTube complimenting Gluck for his supposed "honesty" and willingness to put "integrity over profit."

41. Defendants knew and intended that their false and misleading TALOS review would cause substantial harm to Vulcan and its reputation and customer goodwill, as evidenced by the title Defendants gave the video when it was first posted:  "I just killed the Vulcan Talos (& maybe Vulcan too)."  Many online commenters on the video express negative views about Vulcan and its product based solely on the misrepresentations made by Defendants.  Because of the expense of a universal home gym product like Vulcan's TALOS All-In-One Gym, most consumers will have no opportunity to independently test the product and learn of the falsity of Defendants' representations.

10

## FIRST CLAIM FOR RELIEF

### (False and Misleading Representations of Fact –
### Lanham Act § 43(a)(1)(B), 15 U.S.C. § 1125(a)(1)(B))

42. The allegations of paragraphs 1 through 41, above, are incorporated by this reference.

43. Defendants' false and misleading video about Vulcan's TALOS product constitutes commercial advertising or promotion within the meaning of Section 43(a)(1)(B) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B), in that Defendants were acting to advance their commercial relationships with Vulcan's direct competitors.

44. Defendants' video misrepresents the nature, characteristics, and qualities of Vulcan's TALOS product.

45. As a direct and proximate result of Defendants' conduct as alleged above, Vulcan has suffered harm and damage, in that it has lost and is continuing to lose sales and profits that it otherwise would have earned, and its reputation with consumers and the trade has been impaired and damaged. The amount of Vulcan's damages is not reasonably capable of precise assessment at present, but will be proved with specificity at trial.

46. Defendants' conduct as above alleged is ongoing, and will cause continuing, escalating, and irreparable damage to Vulcan's business and reputation unless and until Defendants are enjoined by this Court.

## SECOND CLAIM FOR RELIEF
### (Defamation)

47. The allegations of paragraphs 1 through 46, above, are incorporated by this reference.

48. The falsehoods communicated by Defendants in their video tend to impeach Vulcan in its trade or profession, and otherwise tend to subject Vulcan to ridicule, contempt or

11

disgrace.

49. Defendants knowingly published their false and defamatory statements to the general public.

50. Defendants knew that statements in their video were false, and/or failed to exercise ordinary care in order to determine whether they were false.

51. As a direct and proximate result of Defendants' conduct as alleged above, Vulcan has suffered harm and damage, in that it has lost and is continuing to lose sales and profits that it otherwise would have earned, and its reputation with consumers and the trade has been impaired and damaged. The amount of Vulcan's damages is not reasonably capable of precise assessment at present, but will be proved with specificity at trial.

52. Vulcan through its attorney made written request to Defendants that they withdraw and correct the false representations in Defendants' video, but Defendants have failed to do so. Defendants' conduct as above alleged is ongoing, and will cause continuing, escalating and irreparable damage to Vulcan's business and reputation unless and until Defendants are enjoined by this Court.

## THIRD CLAIM FOR RELIEF
**(Unfair And Deceptive Trade Practices – N.C. Gen. Stat. §75-1.1)**

53. The allegations of paragraphs 1 through 52, above, are incorporated by this reference.

54. Defendants' conduct as above alleged was and is in commerce and affects commerce in the State of North Carolina.

55. Defendants' conduct as above alleged constitutes unfair and deceptive acts and practices and unfair methods of competition in violation of the provisions of N.C. Gen. Stat. §75-1.1, *et seq.*

56.     As a direct and proximate result of Defendants' conduct as alleged above, Vulcan has suffered harm and damage, in that it has lost and is continuing to lose sales and profits that it otherwise would have earned, and its reputation with consumers and the trade has been impaired and damaged. The amount of Vulcan's damages is not reasonably capable of precise assessment at present, but exceeds $75,000, and will be proved with specificity at trial.

57.     Defendants' conduct as above alleged is ongoing, and will cause continuing, escalating and irreparable damage to Vulcan's business and reputation unless and until Defendants are enjoined by this Court.

58.     Defendants have willfully engaged in the unfair methods of competition and unfair and deceptive acts and practices alleged above, and there was an unwarranted refusal by Defendants to fully resolve the matter, warranting the award of attorneys' fees to Vulcan pursuant to N.C. Gen. Stat. §75-16.1.

## FOURTH CLAIM FOR RELIEF
**(Common Law Unfair Competition)**

59.     The allegations of paragraphs 1 through 58, above, are incorporated by this reference.

60.     Defendants' false and misleading video about Vulcan's TALOS product constitutes unfair competition in violation of the common law of the State of North Carolina, in that Defendants falsely disparaged Vulcan and its product in order to advance Defendants' commercial relationships with Vulcan's direct competitors.

61.     Defendants' false and misleading video about Vulcan's TALOS product has in fact deceived and misled the consuming public.

62.     As a direct and proximate result of Defendants' conduct as alleged above, Vulcan has suffered harm and damage, in that it has lost and is continuing to lose sales and profits that it

13

otherwise would have earned, and its reputation with consumers and the trade has been impaired and damaged. The amount of Vulcan's damages is not reasonably capable of precise assessment at present, but exceeds $75,000, and will be proved with specificity at trial.

63. Defendants' conduct as above alleged is ongoing, and will cause continuing, escalating and irreparable damage to Vulcan's business and reputation unless and until Defendants are enjoined by this Court.

64. Defendants knew or should have known that their conduct was reasonably likely to result in injury, damage, or other harm, thus warranting the award of punitive damages.

## **PRAYER FOR RELIEF**

WHEREFORE, Vulcan prays that the Court enter judgment in its favor and against Defendants as follows:

1. That this Court issue a preliminary injunction and permanent injunction enjoining Defendants, their employees, representatives, and agents, and any persons or entities in active concert or participation with them, from further publication or distribution of Defendants' false and misleading video concerning Vulcan's TALOS product on any platform or by any medium;

2. That Defendants be ordered to publish a retraction on each platform or medium on which Defendants' false and misleading video has been published, and to undertake, or to compensate Vulcan for undertaking, further corrective advertising reasonably calculated to attempt to mitigate the harm engendered by Defendants' conduct;

4. That Defendants be ordered to file with the Court and serve upon Vulcan's counsel a written report under oath within thirty (30) days after service of notice of entry of judgment or issuance of an injunction pursuant thereto, setting forth details of the manner in which Defendants have complied with the Court's order pursuant to paragraphs 1 and 2 above.

14

6. That Vulcan have and recover of Defendants its actual damages sustained by reason of Defendants' acts in violation of Lanham Act § 43(a)(1)(B), 15 U.S.C. § 1125(a)(1)(B), in such amounts as may be proved at trial, such damages to be trebled pursuant to the provisions of Lanham Act § 35, 15 U.S.C. § 1117;

7. That Vulcan have and recover of Defendants its damages sustained by reason of Defendants' acts of defamation in such amounts as may be proved at trial, or alternatively that Vulcan recover presumed damages as allowed by law, together with punitive damages pursuant to N.C.G.S. § 1D-15 in such amount as may be adequate to punish Defendants' willful and wanton conduct and to deter such conduct on the part of others;

8. That Vulcan have and recover of Defendants its actual damages sustained by reason of Defendants' unfair and deceptive trade practices and unfair methods of competition in violation of N.C.G.S. § 75-1.1 in such amounts as may be proved at trial, such damages to be trebled pursuant to the provisions of N.C.G.S. § 75-16;

9. That Vulcan have and recover of Defendants its damages sustained by reason of Defendants' acts of common law unfair competition in such amounts as may be proved at trial, together with punitive damages pursuant to N.C.G.S. § 1D-15 in such amount as may be adequate to punish Defendants' willful and wanton conduct and to deter such conduct on the part of others;

9. That the Court deem this to be an exceptional case, and award to Vulcan its reasonable attorney fees incurred in prosecuting its claims under the Lanham Act, pursuant to the provisions of Lanham Act § 35, 15 U.S.C. § 1117;

10. That Vulcan have and recover its reasonable attorney fees incurred in prosecuting its claim for unfair and deceptive trade practices pursuant to N.C.G.S. § 75-16.1;

15

Case 3:25-cv-00878-FDW-SCR    Document 1    Filed 10/31/25    Page 15 of 16

11. That all costs of this action be assessed against Defendants;

12. That Vulcan have a trial by jury of all issues properly so triable; and

13. That Vulcan have such other and further relief as the Court may deem just and proper.

Dated: October 31, 2025

                                              **/s/Rodrick J. Enns**
Rodrick J. Enns
N.C. State Bar No. 12151
ENNS & ARCHER LLP
939 Burke Street
Winston-Salem, NC 27101
Telephone: (336) 723-5180
E-mail: renns@ennsandarcher.com

*Attorneys for Plaintiff Advanced Fitness Concepts, Inc. d/b/a Vulcan Strength Training Systems*