# Exhibit A

**Supplemental Complaint (Proposed)**

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| **ADVANCED FITNESS CONCEPTS, INC. d/b/a VULCAN STRENGTH TRAINING SYSTEMS,** <br><br> Plaintiff, <br><br> v. <br><br> **ADRIAN GLUCK and GLUCK'S GYM LLC,** <br><br> Defendants. | Civil Action No. 3:25-cv-878-FDW-SCR <br><br> **SUPPLEMENTAL COMPLAINT** <br><br> Jury trial demanded |

Plaintiff Advanced Fitness Concepts, Inc. d/b/a Vulcan Strength Training Systems ("Vulcan" or "Plaintiff"), by and through its undersigned counsel, for its Supplemental Complaint against Defendants Adrian Gluck ("Gluck") and Gluck's Gym LLC ("Gluck's Gym") (collectively "Defendants"), alleges and states as follows:

**Nature of the Action**

1. This action was commenced by the filing of Vulcan's Complaint on October 31, 2025 ("the Original Complaint"), seeking injunctive and monetary relief based on Defendants' publication of false, unfair, deceptive, and defamatory statements about Vulcan and its products in violation of federal and state law. Since that filing, Defendants have posted additional online content, including a new public video doubling down on the misrepresentations and misleading statements in their original videos and making additional false, misleading, and defamatory statements, including assertions that this lawsuit is a "bullying tactic" and "intimidation" whose allegations are "misleading and inaccurate." This conduct was intended to, and has, increased the harm and damage to Vulcan, and has also unjustly enriched Defendants. Vulcan therefore

submits this Supplemental Complaint to place Defendants' ongoing tortious conduct before the Court.

## The Original Complaint

2. Vulcan affirms its reliance on the Original Complaint, and incorporates each of the allegations of the Original Complaint by this reference.

## Defendants' Post-Complaint Public Video

3. On November 14, 2025, following the filing of the Original Complaint, Defendants through their counsel of record requested that Vulcan consent to an extension of thirty days for Defendants to respond to the Original Complaint. Vulcan, through counsel, consented to the request.

4. Six days later, on November 20, 2025, Defendants posted a new video to YouTube titled "I Got Sued…" In the nearly 18 minute video, Defendant Gluck informs his audience that he has been sued by Vulcan for false advertising and defamation, and then states, "My review was negative, and I stand by it."

5. Gluck continues, "with our lawyer's help, I'm going to step you through many of the points of that 16-page complaint so I can respond to them." Gluck then displays all sixteen pages of the Original Complaint, but for so short a time and at such a small resolution that it is impossible for viewers to read it. Instead, he provides viewers with his conclusory characterizations, saying that Vulcan's allegations are "often misleading and inaccurate," and that the lawsuit is "a bullying tactic. It's intimidation."

6. This is a repeat of a tactic Gluck used in the original defamatory video, briefly flashing illegible legal documents onscreen to bolster the false claim that he had been subject to legal intimidation in the past.

7. Gluck then purports to address specific allegations in the Original Complaint. His comments include additional falsehoods, and in some cases actually confirm the original misrepresentations in the course of trying to excuse them.

8. For example, Gluck denies that he initially solicited Vulcan to do a review, asserting that "In July of 2024, the CEO of Vulcan reached out to us about reviewing their Talos and Forge rack systems." The implication that Vulcan initiated the contact in July 2024 is false. Gluck reached out to Vulcan to propose reviewing its products more than three months earlier. On April 1, 2024, Gluck sent the following email to Vulcan:

> ---- on Mon, 01 Apr 2024 19:15:10 -0400 "Adrian Gluck"<glucksgym@gmail.com> wrote ----
> Hi Vulcan,
> My wife and I will be filming at Home Gym Con and will be creating a video (or videos) similar to our Arnold video from last year. We're reaching out to the companies at Home Gym Con that we'd be interested in filming with. Just want to make sure you're ok with us filming your booth.
>
> We'd also be interested in creating dedicated YouTube reviews of equipment like your Talos. Typically we create at least one Instagram reel of our YT footage and have been writing articles as well. Here's an example of our Titan SquatMax-MD article.

9. On May 1, 2024, Gluck again solicited a review, sending the following email to a Vulcan representative:

> ---- On Wed, 01 May 2024 13:58:23 -0400 "Adrian Gluck" wrote ----
> Hi Greta,
> Didn't see Vulcan at HGC, I'm guessing you had to pull out for some reason.
>
> Any interest in us reviewing your Forge and Talos?
>
> Adrian

10. In his latest video, Gluck repeats his original claim that the ordering process for the Vulcan Talos was "difficult" and "confusing." But he then admits that Vulcan personnel "were very helpful in helping me figure out how and what to order," a material misleading

3

omission from his original "review."  Gluck attempts to defend this omission by saying, "but I'm talking directly with the CEO and owner of the company. I don't think most people are getting that same treatment."

11.     The truth is that Vulcan is a small company, and its CEO and owner often talks directly with customers about their orders.  Other Vulcan personnel are trained to provide the same helpful guidance and service, which is why, prior to Gluck's defamatory videos, Vulcan was highly regarded for its customer service.  Gluck's assertion to the contrary is without any factual basis.

12.     Gluck continues by repeating his original claim that Vulcan's assembly instructions are inadequate, saying that they consist of only four steps.  He compares this with Rep's Aries 2.0, a competitor's product that Gluck claims has "similar functionality" and whose instructions "have something like fifty steps."  These statements are false and misleading for two reasons.  First, the Rep Aries 2.0 is a patented product that is vastly more complicated than the Talos, with over thirty pulleys and multiple parts.  Second, Vulcan provides customers with additional instructions consisting of a six page step-by-step guide with text and illustrations, which Gluck admits later in this video that he received, but never mentioned in his original defamatory video, another misleading and material omission.

13.     Gluck attempts to bolster his disparaging comments about Vulcan's assembly instructions by stating that "the directions and model all show the older pulley bracket that apparently Vulcan had stopped using."  This is an intentionally misleading statement, because it fails to disclose, as alleged in the Original Complaint, that Vulcan had informed him at the outset that the pulleys had been re-designed and that the equipment Gluck received was the last in Vulcan's inventory with the old pulleys.  Gluck fails to disclose in his new video that he and

4

Vulcan had discussed that Gluck would wait to receive the new parts before finalizing his review, instead misleadingly implying that these circumstances reflected some defect in the instructions.

14. Gluck's original video claimed that the instructions led him to install the rear crossmember wrong. He now repeats the claim that in the instructions, "there's no indication of the orientation of the rear crossmember." This is false. The rear crossmember only has holes on the top side, and the instructions depict the part installed with the holes on the top side.

15. In his original defamatory video, Gluck claimed falsely that the pull-up bar doesn't fit. He now impliedly admits that it does, but attempts to defend his misrepresentation by claiming that the installation illustration was not "high definition" and was "too grainy" to follow. He nonetheless admits that he was "eventually" able to assemble it.

16. In his original defamatory video, Gluck falsely asserted that it was not possible to adjust the cable tension from the trolley. He now admits, "Yes, you can adjust the cable tension on Vulcan's trolley," but falsely claims that he was talking about something else in the original video: that the cable tension adjustments did not allow him to equalize the left and right cables. That is not what his original video said.

17. Gluck also attempts to defend his original statement by now claiming that the tension adjustment, which he originally said did not exist, still leaves the cables too loose, thus connecting the issue to his expletive-laden complaint from the original video about the cables having too much slack.

18. But Gluck now concedes a critical fact he never disclosed in the original video: that Vulcan offered to send him shorter cables, which are available to all customers. He also does not deny that he declined that offer, telling Vulcan that the cables he had were fine. Gluck

5

attempts to excuse this misleading omission by saying that "I'm talking directly with the CEO and owner of the company by phone and email," and "I don't think it's far-fetched for me to think that customers wouldn't be offered that same experience." He knew this wasn't true. In an email sent June 18, 2025, well before Gluck filmed his first video, Vulcan's CEO told Gluck:

> The factory spec for the cables is 7.77m (305.90") and 4.07m (160.23") two short cable and two long cables. The tolerance is approximately 1.75". So it can be that a cable has a little slack. What we always do if a customer reports they would like the cables tighter, it is to find out how much shorter they want the cable and make an adjustment and ship out new cables. For the majority of customers an inch or so slack isnt a problem but we do understand that everyone has different preferences and we try to accomadate that as much as possible

Gluck's speculation that Vulcan customers wouldn't be offered such a cable adjustment is directly contrary to what he was told in writing that Vulcan "always" does, and lacks any factual basis.

19. In his new video, Gluck mischaracterizes a discussion with Vulcan's CEO to suggest that Vulcan lacks knowledge of industry standards. Gluck claims that Vulcan's CEO admitted unfamiliarity with competitor trolley cable tension systems and an inability to research them. What was actually stated was very different. In the conversation, Gluck repeatedly referred to an "adjuster," a non-specific term that he did not define. He did not identify the component by name, instead directing Vulcan's CEO to review Rogue's website. Vulcan's CEO explained that he did not recognize that terminology and does not routinely acquire competitor products for teardown or reverse engineering.

20. The component at issue is known as a threaded cable tensioner. In practical terms, the difference this component makes affects only the visual appearance of cable tension, not machine function. Vulcan's design adjusts cable length through three fixed mounting positions spaced approximately 10 millimeters apart. Once set taut, there is no meaningful slack, and any additional tension, even on the order of a few millimeters, causes the weight stack to lift.

6

A threaded cable tensioner permits marginal visual adjustment within that same narrow range, but does not alter performance or operation.

21. Gluck's mischaracterization of this conversation to falsely imply that Vulcan is uninformed about industry technology materially damages Vulcan's reputation among actual and potential customers, and upon information and belief Defendants knew and intended it to do so.

22. In his new video, Gluck says that he was contacted by a delivery service to pick up the Talos equipment for Vulcan. Gluck complains, "I'd have appreciated a heads up before sending someone to my house," implying that this was a surprise and that Vulcan had treated him without proper courtesy. Gluck fails to disclose, as alleged in the Original Complaint and as he does not deny in his new video, that he and Vulcan's CEO had agreed to put the review on hold because of the delay of the new parts, and had explicitly agreed that Vulcan would send someone to pick the equipment up.

23. Gluck states that at this point, "I told Vulcan that because of the issues we've dealt with and because they've been selling the rack for years, since 2023, that we're going to publish our review because we feel that we owe it to the consumers, our viewers, to share the review." But this was a pretext. Gluck knew that he had received the final Talos of that version, that Vulcan was in the process of releasing a revised version offering increased functionality and refinement, and that the cable routing pulleys, a primary focus of his criticism, had already been redesigned and were no longer being shipped. Vulcan provided Gluck with one of the updated pulleys and confirmed these facts in writing. This was the reason the parties had agreed to put the project on hold until the new parts arrived, and to have Vulcan retrieve the equipment. By releasing his video when he did, Gluck materially misled viewers into believing that he had tested a currently shipping product that consumers might purchase, which he knew was not true.

24.     In his new video, Gluck claims that his "affiliate percentage" from Vulcan was 12%. This is materially misleading. The affiliate agreement he signed with Vulcan provided for a range of compensation depending on the products sold, from 12% down to 5%, as shown on Vulcan's affiliate dashboard:



The 12% cited by Gluck applied to only a few products that did not include the Talos. The affiliate percentage for the Vulcan Talos was 8%.

25.     More importantly, Gluck claims that the affiliate percentages paid by competitors Rogue and Rep are lower than Vulcan's, implying to viewers that he therefore had no incentive to protect his revenue stream from those companies. This is misleading, because Gluck fails to discuss the volume of sales involved. Companies like Rep and Rogue are significantly larger than Vulcan with substantially higher sales volume. Upon information and belief, the total amount of revenue Defendants receive from promoting sales of Rogue and Rep products is substantially greater than any revenue Defendants could realistically receive from Vulcan sales.

26.     In a telephone conversation with Vulcan's CEO in July of 2025, Gluck stated that he had purchased over $50,000 of Rogue equipment in the past six months. Upon information

and belief, such an investment reflects that Gluck had realized, and expected to realize, revenue in excess of $50,000 from his promotion of Rogue products. Upon information and belief, Gluck was well aware that such revenue dwarfed any volume that could reasonably be generated from Vulcan sales.

27. In the same conversation, Gluck stated that he had been told Rogue thought he was "doing a good job," and expected that Rogue would start giving him free equipment.

28. In concluding the new video, Gluck attempts to bolster the credibility of his original incendiary review of the Vulcan Talos by saying that "another reviewer" also reviewed the same equipment, that the other reviewer "had no idea my review was coming out," and "after going through their own independent testing process, they also didn't give it a favorable review."

29. These representations are false and misleading in several respects. The other reviewer, who goes by his first name Jonathan and maintains a YouTube channel under the user name "NoFate247," posted his review on YouTube on October 25, 2025, and stated in the cover comment, "Gluck's Gym called the Vulcan Talos All in One Home Gym Power Rack the WORST! Garage-Gyms [another reviewer] article says it's the BEST." His review references Defendants' review multiple times. Defendants were therefore well aware that Jonathan had seen Gluck's review.

30. Further, while Jonathan's ultimate conclusion was that he "can't in good conscience recommend the Vulcan Talos as it stands today," he nonetheless made many positive comments about the product, saying that the Talos "does have a lot of things going for it." He complimented the sturdiness of the equipment, the weight capacity, and the smoothness of the trolleys.

31. In particular, Jonathan noted that when "Gluck reviewed the Vulcan Talos, he

9

absolutely decimated the cable tension, saying that it was too loosey goosey. Now, I had my concerns installing it, but after I set it up, it seemed to have some pretty taunt cable tension, almost ideally where I would want it to be."

32. Defendants' new video failed to disclose any of these positive comments, instead falsely implying that Jonathan's review fully and independently validated all of the misrepresentations in Defendants' original defamatory video.

33. The foregoing is not an exhaustive list of all of the material misrepresentations and omissions in Defendants' new video, but are representative examples of the false and misleading tactics employed.

## The Impact of Defendants' Post-Complaint Conduct

34. The cumulative effect of all of the misrepresentations and misleading omissions in Defendants' new video is to falsely portray Vulcan as a "bully" whose commencement of this action was without proper basis, and to falsely portray Defendants as "victims" of Vulcan's conduct.

35. Defendants' new video was intended to cause, and is causing, substantial additional harm and damage to Vulcan's customer reputation and goodwill. Actual and potential customers for Vulcan's products are being misled and are likely to be misled by Defendants' misrepresentations and omissions. YouTube reports that the new video has been viewed more than 600,000 times, and more than 5,000 user comments have been posted. The vast majority of those comments reflect that users have in fact been materially misled by Defendants' conduct, referring to this lawsuit as "frivolous" and commending Gluck for speaking "the truth."

36. The extra-judicial statements and omissions by Defendants in the new video enjoy no judicial privilege or immunity.

10

37. Based on Gluck's statement in the new video that it was prepared "with our lawyer's help," upon information and belief Defendants published their misrepresentations intentionally and with full understanding of the legal consequences of their actions.

38. Upon information and belief, Defendants have profited handsomely from their unfair and deceptive conduct. In the new video Gluck makes an explicit plea for financial support from viewers, claiming that "We've already paid a retainer to a lawyer and there's a lot of fees and costs that we'll have to pay to fight this." This claim is at best misleading. On November 7, 2025, well prior to the publication of Defendants' new video, lead counsel of record for Defendants sent an email to counsel for Vulcan that stated in relevant part, "I have offered to handle this case for free for Mr. Gluck."

39. Instead of disclosing this fact to the public, Gluck in the new video encourages viewers to provide financial help by visiting a page Defendants set up on GoFundMe.com, a fundraising website. That page repeats in summary form many of the misrepresentations from Defendants' new video, and specifically asserts:

> We have no idea how much this will cost or how long it will take but after years of posting critical, thorough, and honest reviews we don't want to see our reputation slandered which is what we believe one of the intents behind this lawsuit. Another large one being Vulcan knows we can't compete with them financially so this bullying tactic is their way of penalizing us for posting the video.

40. Defendants' GoFundMe.com page reports that Defendants have generated more than $78,000 in donations based on their false and misleading representations about Vulcan and its product.

41. Defendants' GoFundMe.com page states, "All funds will go toward defraying legal costs. Any unspent funds will be reserved for future legal fees or put back into the channel for content." Based on this statement, Defendants intend to retain all funds notwithstanding the

11

free representation by their lawyers.

## FIRST CLAIM FOR RELIEF

### (False and Misleading Representations of Fact – Lanham Act § 43(a)(1)(B), 15 U.S.C. § 1125(a)(1)(B))

42. The allegations of paragraphs 1 through 41, above, are incorporated by this reference.

43. Defendants' new false and misleading video about Vulcan's TALOS product, combined with its original false and misleading video, constitutes commercial advertising or promotion within the meaning of Section 43(a)(1)(B) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B), in that Defendants were acting to advance their commercial relationships with Vulcan's direct competitors.

44. Defendants' new video misrepresents the nature, characteristics, and qualities of Vulcan's TALOS product.

45. As a direct and proximate result of Defendants' conduct as alleged above, Vulcan has suffered harm and damage, in that it has lost and is continuing to lose sales and profits that it otherwise would have earned, and its reputation with consumers and the trade has been impaired and damaged. The amount of Vulcan's damages is not reasonably capable of precise assessment at present, but will be proved with specificity at trial.

46. Defendants' conduct as above alleged is ongoing, and will cause continuing, escalating, and irreparable damage to Vulcan's business and reputation unless and until Defendants are enjoined by this Court.

## SECOND CLAIM FOR RELIEF

### (Defamation)

47. The allegations of paragraphs 1 through 46, above, are incorporated by this reference.

12

48. The falsehoods communicated by Defendants in their new video tend to impeach Vulcan in its trade or profession, and otherwise tend to subject Vulcan to ridicule, contempt or disgrace.

49. Defendants knowingly published their false and defamatory statements to the general public.

50. Defendants knew that statements in their new video were false, and/or failed to exercise ordinary care in order to determine whether they were false.

51. As a direct and proximate result of Defendants' conduct as alleged above, Vulcan has suffered harm and damage, in that it has lost and is continuing to lose sales and profits that it otherwise would have earned, and its reputation with consumers and the trade has been impaired and damaged. The amount of Vulcan's damages is not reasonably capable of precise assessment at present, but will be proved with specificity at trial.

52. Vulcan through its attorney made written request to Defendants that they withdraw and correct the false representations in Defendants' original defamatory video, and Defendants not only continue to fail to do so, but by their new video have re-published and reinforced their defamatory statements. Defendants' conduct as above alleged is ongoing, and will cause continuing, escalating and irreparable damage to Vulcan's business and reputation unless and until Defendants are enjoined by this Court.

## THIRD CLAIM FOR RELIEF
**(Unfair And Deceptive Trade Practices – N.C. Gen. Stat. §75-1.1)**

53. The allegations of paragraphs 1 through 52, above, are incorporated by this reference.

54. Defendants' conduct as above alleged was and is in commerce and affects commerce in the State of North Carolina.

13

55. Defendants' conduct as above alleged constitutes unfair and deceptive acts and practices and unfair methods of competition in violation of the provisions of N.C. Gen. Stat. §75-1.1, *et seq.*

56. As a direct and proximate result of Defendants' conduct as alleged above, Vulcan has suffered harm and damage, in that it has lost and is continuing to lose sales and profits that it otherwise would have earned, and its reputation with consumers and the trade has been impaired and damaged. The amount of Vulcan's damages is not reasonably capable of precise assessment at present, but exceeds $75,000, and will be proved with specificity at trial.

57. Defendants' conduct as above alleged is ongoing, and will cause continuing, escalating and irreparable damage to Vulcan's business and reputation unless and until Defendants are enjoined by this Court.

58. Defendants have willfully engaged in the unfair methods of competition and unfair and deceptive acts and practices alleged above, and there was an unwarranted refusal by Defendants to fully resolve the matter, warranting the award of attorneys' fees to Vulcan pursuant to N.C. Gen. Stat. §75-16.1.

## FOURTH CLAIM FOR RELIEF
(Common Law Unfair Competition)

59. The allegations of paragraphs 1 through 58, above, are incorporated by this reference.

60. Defendants' false and misleading videos about Vulcan's TALOS product constitute unfair competition in violation of the common law of the State of North Carolina, in that Defendants falsely disparaged Vulcan and its product in order to advance Defendants' commercial relationships with Vulcan's direct competitors.

61. Defendants' false and misleading video about Vulcan's TALOS product has in

14

fact deceived and misled the consuming public.

62. As a direct and proximate result of Defendants' conduct as alleged above, Vulcan has suffered harm and damage, in that it has lost and is continuing to lose sales and profits that it otherwise would have earned, and its reputation with consumers and the trade has been impaired and damaged. The amount of Vulcan's damages is not reasonably capable of precise assessment at present, but exceeds $75,000, and will be proved with specificity at trial.

63. Defendants' conduct as above alleged is ongoing, and will cause continuing, escalating and irreparable damage to Vulcan's business and reputation unless and until Defendants are enjoined by this Court.

64. Defendants knew or should have known that their conduct was reasonably likely to result in injury, damage, or other harm, thus warranting the award of punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, Vulcan prays that the Court enter judgment in its favor and against Defendants as follows:

1. That this Court issue a preliminary injunction and permanent injunction enjoining Defendants, their employees, representatives, and agents, and any persons or entities in active concert or participation with them, from further publication or distribution of Defendants' false and misleading videos and other online statements concerning Vulcan and its TALOS product on any platform or by any medium;

2. That Defendants be ordered to publish a retraction on each platform or medium on which Defendants' false and misleading videos and other online statements have been published, and to undertake, or to compensate Vulcan for undertaking, further corrective advertising reasonably calculated to attempt to mitigate the harm engendered by Defendants'

conduct;

3. That Defendants be ordered to file with the Court and serve upon Vulcan's counsel a written report under oath within thirty (30) days after service of notice of entry of judgment or issuance of an injunction pursuant thereto, setting forth details of the manner in which Defendants have complied with the Court's order pursuant to paragraphs 1 and 2 above.

4. That Vulcan have and recover of Defendants its actual damages sustained by reason of Defendants' acts in violation of Lanham Act § 43(a)(1)(B), 15 U.S.C. § 1125(a)(1)(B), in such amounts as may be proved at trial, such damages to be trebled pursuant to the provisions of Lanham Act § 35, 15 U.S.C. § 1117;

5. That Vulcan have and recover of Defendants its damages sustained by reason of Defendants' acts of defamation in such amounts as may be proved at trial, or alternatively that Vulcan recover presumed damages as allowed by law, together with punitive damages pursuant to N.C.G.S. § 1D-15 in such amount as may be adequate to punish Defendants' willful and wanton conduct and to deter such conduct on the part of others;

6. That Vulcan have and recover of Defendants its actual damages sustained by reason of Defendants' unfair and deceptive trade practices and unfair methods of competition in violation of N.C.G.S. § 75-1.1 in such amounts as may be proved at trial, such damages to be trebled pursuant to the provisions of N.C.G.S. § 75-16;

7. That Vulcan have and recover of Defendants its damages sustained by reason of Defendants' acts of common law unfair competition in such amounts as may be proved at trial, together with punitive damages pursuant to N.C.G.S. § 1D-15 in such amount as may be adequate to punish Defendants' willful and wanton conduct and to deter such conduct on the part of others;

8. That Defendants be ordered to disgorge funds which have been donated to them as a result of Defendants' materially false and misleading statements and omissions;

9. That the Court deem this to be an exceptional case, and award to Vulcan its reasonable attorney fees incurred in prosecuting its claims under the Lanham Act, pursuant to the provisions of Lanham Act § 35, 15 U.S.C. § 1117;

10. That Vulcan have and recover its reasonable attorney fees incurred in prosecuting its claim for unfair and deceptive trade practices pursuant to N.C.G.S. § 75-16.1;

11. That all costs of this action be assessed against Defendants;

12. That Vulcan have a trial by jury of all issues properly so triable; and

13. That Vulcan have such other and further relief as the Court may deem just and proper.

Dated: December 31, 2025

/s/Rodrick J. Enns
Rodrick J. Enns
N.C. State Bar No. 12151
ENNS & ARCHER LLP
939 Burke Street
Winston-Salem, NC 27101
Telephone: (336) 723-5180
E-mail: renns@ennsandarcher.com

*Attorneys for Plaintiff Advanced Fitness Concepts, Inc. d/b/a Vulcan Strength Training Systems*

17